IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MINERALS DEVELOPMENT & SUPPLY
COMPANY, INC.,

|  |  |
|---|---|
| Plaintiff, | OPINION AND ORDER |
| v. | 10-cv-00488-wmc |
| HUNTON & WILLIAMS, LLP, INSIGHT EQUITY HOLDINGS, LLC and INSIGHT EQUITY LP, | |
| Defendants. | |

---

MINERALS DEVELOPMENT & SUPPLY
COMPANY, INC., KENIN R. EDWARDS
and JAMES R. COTE, JR.

|  |  |
|---|---|
| Plaintiffs, | OPINION AND ORDER |
| SUPERIOR SILICA SAND, LLC, | 11-cv-00017-wmc |
| Defendant. | |

---

The disputes between these parties extend across two lawsuits and multiple motions in this court, as well as an arbitration proceeding and two state court cases.  In this opinion, the court resolves all pending motions before this court.

BACKGROUND

Minerals Development & Supply Company, Inc. ("Minerals") brought its original suit in this court in 2010, case no. 10-cv-488-wmc, against Hunton & Williams, LLP ("H&W"), Insight Equity Holdings, LLC and Insight Equity LP (collectively, the "Insight

Equity defendants").  All three of the defendants in the 2010 lawsuit are related to Superior Silica Sands, LLC ("Superior"), the defendant in the second captioned action brought in 2011, case no. 11-cv-117-wmc:  H&W is the law firm representing Superior in the transactions underlying these disputes and the Insight Equity defendants are the owners of Superior.

The 2010 lawsuit arose out of a business dispute between Minerals and Superior, which was already in arbitration.  Minerals filed the lawsuit against H&W and the Insight Equity defendants, alleging tortious interference with contract, aiding and abetting a breach of contract and civil conspiracy.  Eventually, Minerals and Superior reached a settlement of the underlying arbitration, which among other things required Minerals to dismiss its lawsuit against the Insight Equity defendants with prejudice.

Instead of doing that, however, Minerals moved for leave to file an amended complaint in the 2010 lawsuit, seeking to add new claims against the current defendants and adding Superior as a defendant.  Around this same time, Minerals also moved for a temporary restraining order preventing the arbitration panel from deciding whether the settlement agreement should be enforced.  The court denied this motion on December 3, 2010.  (Dkt. #104.)  On the heels of that decision, the arbitration panel conducted a hearing and issued a final award in favor of Superior.

Minerals then filed its second lawsuit in this court, seeking an order vacating the arbitration panel, while Superior filed an application confirming the award.  While all of these motions were pending, the parties *sua sponte* briefed the issue of whether this court

has jurisdiction over the 2011 suit.  Superior also moved to intervene in the 2010 suit to preserve its motion to confirm the arbitration award.

For the reasons explained below, the court will now (1) dismiss the 2011 lawsuit for lack of jurisdiction; (2) grant defendants' motions to dismiss the claims against them in the 2010 suit; and (3) deny Minerals' motion to amend its complaint.

## BACKGROUND

**A.      Sale Agreement and Alleged Breach**

In February 12, 2009, Minerals entered into a contract with Wildcat Companies II, LLC, in which Wildcat agreed to sell raw materials to Minerals for the production of frac sand.  (10-cv-488 dkt. #28-2.)  The next day, February 13, 2009, Minerals entered into a contract with Superior, in which Minerals agreed to sell the same raw materials to Superior for the production of frac sand.  (10-cv-488 dkt. #28-1.)

The agreement between Minerals and Superior contained a dispute resolution provision, which stated in relevant part:

> 8.1   **Negotiation**. In the event of any controversy, claim, question, disagreement or dispute considered by the parties (collectively the "Dispute") *arising out of or relating to this Agreement, or the relationship between the parties*, the parties shall first use their best efforts to resolve the Dispute through negotiation. . . .
>
> 8.2   **Submission to Arbitration.**   If the parties do not resolve the Dispute pursuant to Section 8.1, the parties hereby *agree to submit the Dispute to binding arbitration* in Eau Claire, Wisconsin, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") effective at the time of submission. . . .

> 8.3 **The Federal Arbitration Act Applies.**  This Agreement involves interstate commerce and is subject to the Federal Arbitration Act ("FAA"), 9 [U].S.C. §§ 1-16. . . .

(10-cv-488 dkt. #28-1 at 11 (emphasis added).)

On August 9, 2009, Superior allegedly terminated its contract with Minerals and entered into negotiations directly with Wildcat.  On August 14, 2009, Wildcat allegedly terminated its contract with Minerals at the behest of Superior and its law firm.

## B.    Initial Arbitration Efforts and Initiation of 10-cv-488 Action

Pursuant to their agreement, Minerals and Superior submitted their dispute over the termination of the contract to arbitration.  A seeming settlement was reached around June and July 2010.[1]  But when it fell through, Minerals essentially attempted an end run by filing a separate lawsuit in state court on July 30, 2010 against Superior's law firm, Hunton & Williams, LLP and against Superior's parent companies, Insight Equity Holdings, LLC and Insight Equity LP.  (Orig. Compl. (10-cv-488 dkt. #1-2).)  Minerals alleges claims against H&W for tortious interference with its contract with Wildcat and for civil conspiracy.  The complaint further alleges that all three defendants aided and abetted Wildcat in terminating its contract with Minerals.

---

[1] The Arbitration Panel agreed with Minerals that this initial settlement could not be enforced since it had not been reduced to a signed, written agreement.  (Aug. 24, 2010 Arbitration Order (10-cv-488 dkt. #87-1).)

On August 26, 2010, the defendants filed a notice of removal invoking this court's diversity jurisdiction, 28 U.S.C. § 1332(a).[2]  Minerals later amended its complaint to add claims for breach of protective order against both Insight Equity defendants and breach of contract against Insight Equity LP.  (Am. Comp. (10-cv-488 dkt. #26).)

With the 2010 suit was pending, the arbitration proceedings between Minerals and Superior continued.  The Arbitration Panel held a hearing on the merits on October 4, 2010.  After hearing two days of testimony, the parties advised the panel on the morning of October 6, 2010, that an agreement had been reached to settle the case.  On that day, the parties entered the agreement on the record. (Tr. of Arbitration Proceedings (10-cv-488 dkt. #55-2).)  In brief, Superior agreed to pay Minerals a certain sum of money in return for general, mutual releases that extended to the Insight Equity defendants.  (H&W was expressly not subject to this release.)  The settlement agreement itself does not contain an arbitration provision.

Contrary to its obligation under the settlement agreement, Minerals did not seek to dismiss its claims against the Insight Equity defendants, but rather filed a motion on October 26, 2010, for leave to amend the complaint to add claims against all defendants

---

[2] The court has subject matter jurisdiction over the 10-cv-488 action because there is complete diversity of the parties and the amount in controversy exceeds $75,000. Minerals is incorporated in Illinois with its principal place of business located in Chicago, Illinois.  (Notice of Removal (10-cv-488 dkt. #1) ¶ 7.)  Hunton & Williams is a limited liability partnership, and defendants represent that no partner is a citizen of Illinois.  (*Id.* at ¶ 8.)  Insight Equity Holdings LLC is a limited liability company, and defendants represent that none of its members are citizens of Illinois.  (*Id.* at ¶ 9.)  Insight Equity LP is a limited partnership, and defendants represent that none of its limited partners are citizens of Illinois.  (*Id.* at ¶ 10.)  The general partner of Insight Equity LP is Insight Equity Holdings LLC.  (*Id.*)

and to add Superior as a defendant.  (Mot. to Amend Compl. (10-cv-488 dkt. #55).)  In their opposition brief, defendants moved the court to compel arbitration and to hold the motion for leave to amend in abeyance pending the outcome of arbitration proceedings. (Defs.' Opp'n to Mot. to Amend Compl. (10-cv-488 dkt. #64).)[3]

On October 29, 2010, Superior informed the panel of Minerals' motion for leave to amend its complaint in the 2010 lawsuit and asked the panel to enforce the terms of the settlement agreement.  Minerals opposed Superior's request.  The Arbitration Panel held a telephonic conference with the parties on November 4, 2010.  On November 6, 2010, the panel ordered briefing on (1) the Arbitration Panel's jurisdiction over Superior's motion, (2) whether Minerals can affirm the settlement agreement while at the same time sue the released parties in this court, (3) whether the money paid to Minerals should be held in trust, and (4) whether the panel can sanction or assess attorneys' fees against Minerals.  The arbitration panel further scheduled a hearing for Saturday, December 4, 2010, in Florida to adjudicate Minerals' claim that it was fraudulently induced to enter the October 6th settlement.

In response, Minerals filed a motion for a temporary restraining order in this court on November 12, 2010, seeking an order enjoining any further actions from the Arbitration Panel with respect to Minerals' fraudulent inducement claims.  Following Minerals' filings in this court, the Arbitration Panel issued a supplemental decision

---

[3] Defendants also filed motions to dismiss asserting various theories.  (10-cv-488 dkt. #37 (motion to dismiss by Insight Equity defendants because of lack of personal jurisdiction and because of failure to state a claim); 10-cv-488 dkt. #40 (motion to dismiss by H&W for failure to state a claim); 10-cv-488 dkt. #60 (Insight Equity defendants' motion to dismiss pursuant to Rule 41).)

further explaining its reasons for denying Minerals' request for a stay of the arbitration proceedings.[4]  (10-cv-488 dkt. #94-1.)

In a hearing on December 3, 2010, this court denied Minerals' motion for a TRO. The court found that Minerals had failed to establish that it will suffer irreparable harm absent the entry of an injunction and that Minerals is not likely to succeed on the merits.

**C.     Arbitration Proceedings and Initiation of 11-cv-17 Action**

On December 4, 2010, the arbitration panel conducted an evidentiary hearing in Florida.  (Arbitration Award (11-cv-17 dkt. #3-12) 5.)[5]  Minerals chose not to participate in that hearing.

On January 7, 2011, the arbitration panel issued its award declaring the settlement agreement valid and the alleged fraud non-existent, and awarding Superior fees, costs and sanctions.  (*Id.* at 12-15.)  The same day the arbitration panel issued its decision, Minerals, and two of its officers, Kenin R. Edwards and James R. Cote, filed a second lawsuit in this court -- the 2011 lawsuit -- seeking an order vacating the arbitration panel's decision and award. (11-cv-17 dkt. #3.)  Superior responded by filing

---

[4] As requested by defendants, the court will take judicial notice of the Arbitration Panel's supplemental decision in *Minerals Development Supply Company, Inc. v. Superior Silica Sands LLC* (American Arbitration Association Case No. 51-198-Y-01095-09), available at 10-cv-488 (dkt. #94-1).

[5] The court also takes judicial notice of the Arbitration Panel's final award in *Mineral Development and Supply Company, Inc. v. Superior Silica Sands, LLC* (American Arbitration Association Case No. 51-198-Y-01095-09), which was filed under seal by Minerals, and in case No. 11-cv-17, dkt. #3-12.  *See Stacks v. S.W. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n.3 (8th Cir. 1994) (holding that courts may take judicial notice of arbitration awards pursuant to Fed. R. of Evid. 201).

an application to confirm the arbitration award and enter judgment in favor of Superior. (11-cv-17 dkt. #10.)  The parties subsequently briefed whether the court has jurisdiction over the 2011 action.

**D.    Procedural Posture**

Across these two actions, there are a number of overlapping and interconnected motions, which the court organizes into the following issues:

1) Jurisdictional issues surrounding the 2011 case and Superior Silica's motion to intervene in the 2010 suit;

2) Arbitrability of the settlement dispute;

3) Minerals' motion to amend its 2010 complaint and the Insight Equity defendants' motion to dismiss that complaint pursuant to Fed. R. Civ. P. 41; and

4) Defendant H&W's motion for dismiss the 2010 complaint pursuant to Fed. R. Civ. P. 12(b)(6).

OPINION

**I.    Jurisdictional Issues**

As an initial matter, the court must determine whether it has jurisdiction over the 2011 action in which the parties request this court to vacate or confirm the arbitration award.  Federal question jurisdiction does not exist over an application to confirm or vacate an arbitration award, even if, as is the case here, the arbitration is subject to the Federal Arbitration Act.  *Moses H. Cone Hosp. v. Mercury Constr.*, 460 U.S. 1, 25 n.32 (1983).  A couple of months after the parties submitted their respective applications in

the 2011 action, Minerals submitted a supplemental statement on jurisdiction, asserting the grounds for this court to exercise its diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).  (11-cv-17 dkt. #42.)

In this supplemental statement, Minerals represented that there was complete diversity of citizenship because the three plaintiffs are all citizens of the State of Illinois and the sole members of Superior Silica Sands, LLC, Victor Vescovo and Ted Beneski, are both citizens of the State of Texas.[6]  (Minerals' Supp. Jurisdictional Statement (11-cv-17 dkt. 42) ¶ 6.)  In its response brief, Superior clarifies that the sole member of Superior is Superior Silica Holdings, LLC ("Holdings"), and that the "membership of Holdings consists of a series of other limited liability companies and partnerships." (Superior's Opp'n Br. (11-cv-17 dkt. #45) 1-2.)  Superior further states that it "does not know the ultimate ownership of all these tiers of intervening limited liability companies and partnerships and is not privy to records sufficient to ascertain that information."  (*Id.* at 2.)  Given this uncertainty, Superior acknowledges that it may have a member that shares citizenship in the State of Illinois with the three plaintiffs.  (*Id.*)

Undeterred by this predicament, Superior moves to intervene as a defendant in the 2010 action pursuant to Federal Rule of Civil Procedure 24, arguing that the court may exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the 2011

---

[6] Minerals actually states that the individual parties are "residents" of particular states, rather than "citizens."  This distinction is meaningful:  "Residence and citizenship are not synonyms and it is the latter that matters for purposes of diversity jurisdiction."  *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002).  Given the court's finding that complete diversity jurisdiction does not exist, in any event, the court need not dwell on this oversight.

action.  (10-cv-488 dkt. #125.)  Superior also invites the court to (1) deem the pleadings in the 2011 action to have been filed in the 2010 action, (2) declare the issues raised by those pleadings ripe for decision, (3) add Edwards and Cote, who are parties to the 2011 action, as parties to the 2010 action, and (4) confirm the arbitration award.  (*Id.*)

In response, Minerals argues that 28 U.S.C. § 1367(b) bars the court's exercise of supplemental jurisdiction under these circumstances.  This subpart of the supplemental jurisdiction statute provides:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

Here, the court's jurisdiction over the 2010 action is "founded solely" on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  *See* discussion *supra* n.2.  Moreover, allowing Superior -- as a possible citizen of the same state as the sole plaintiff in the 2010 action -- to intervene would destroy diversity of citizenship and, therefore, "be inconsistent with the jurisdictional requirements of section 1332."  Nevertheless, Superior argues that 28 U.S.C. § 1367(b) does not apply because it is seeking to intervene as a *defendant*, not as a *plaintiff.*

While it is true that Superior purports to seek leave to intervene "as a defendant," this appears to be more an attempt to navigate its way around § 1367(b), than an accurate description of Superior's actual status as intervenor.  In substance, Superior functions more as a plaintiff in seeking to intervene in the 2010 action.  Specifically, Superior seeks to confirm the arbitration award and also seeks to add the two individuals who were parties to the 2011 action, Edwards and Cote, in order to bind them to the confirmation.  Even though Superior has not identified itself as a plaintiff, that is the position it seeks to maintain.  Therefore, the court finds § 1367(b) prevents the court from exercising supplemental jurisdiction over the dispute that is the subject of Superior's motion to intervene.  Accordingly, the court will deny that motion.  (10-cv-488 dkt. #125.)[7]

Similarly, the court cannot proceed with the 2011 action given the uncertainty of the citizenship of defendant Superior.  *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("[A]n LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well.") (citing 7th Cir. R. 28(a)(1)).  Nor can the court consolidate the actions pursuant to Fed. R. Civ. P. 48. *See, e.g., Miller v. Safeco Ins. Co. of Am.*, No. 06-C-1021, 2007 WL 2193599, at *1 (E.D. Wis. July 30, 2007) ("[F]ederal courts have 'no authority to consolidate an action of

---

[7] If Superior's purpose were merely to be added as a defendant, as part of a joint defense against Minerals' affirmative claims, then exercise of supplemental jurisdiction would likely be permitted, especially where the interest of the named defendants and Superior are so closely aligned.  Indeed, Minerals itself seeks to have Superior added as a defendant.  But this would be pointless given that Minerals' affirmative claims are being dismissed for the reasons explained below.

11

which it has jurisdiction with one it does not.'") (quoting *Appalachian Power Co. v. Region Props., Inc.*, 364 F. Supp. 1273, 1277 (W.D. Va. 1973)).

While the court is sympathetic to Superior's position and agrees that having this court decide all of the issues raised in the two actions would provide the "most efficient and expeditious resolution" (Superior's Reply Br. (10-cv-488 dkt. #133-1) 1), interests of judicial efficiency and even of justice cannot save a federal action if subject matter jurisdiction is lacking.

For the reasons explained above, the court dismisses the 2011 action for lack of subject matter jurisdiction.  The parties must proceed in state court on their respective applications to vacate and to confirm the arbitration award.


## II.    Arbitrability of Settlement Dispute

The issue of arbitrability is a recurring theme in both cases.  The court addressed it in a cursory fashion in denying Minerals' motion for a temporary restraining order, but will address the issue more fully here in deciding the Insight Equity defendants' motion to dismiss the 2010 action pursuant to Fed. R. Civ. P. 41 and Minerals' motion for leave to file a second amended complaint in that action.

Arbitrability is at bottom a matter of contract interpretation, certain presumptions guide that interpretation.  *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995).  Given the strong federal policy favoring arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) (internal quotation marks omitted).  Stated

another way, there is a presumption in favor of arbitration and any doubts concerning the arbitrability of disputes should be resolved in favor of arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Accordingly, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Matthews*, 72 F.3d at 53 (internal quotation marks and citations omitted).

Here, the arbitration provision in the contract is broad in scope, covering not only any dispute "arising out of or relating to this Agreement", but also any dispute "arising or relating to . . . the relationship between the parties." Arbitration provisions containing similar "arising out of or relating to" language have been described by the Seventh Circuit as "extremely broad and capable of an expansive reach." *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *see also Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (characterizing arbitration clause covering all claims either "arising out of" or "relating to" parties' agreement as "a very broad, standard arbitration clause"); *Matthews*, 72 F.3d at 53-54 (giving expansive reading to arbitration clause that governed all claims "relating to" breach of parties' agreement).

The settlement agreement was entered into the record to resolve a dispute after a multi-day, evidentiary hearing before a panel proceeding under the arbitration provision in the parties' underlying contract. Even if the settlement agreement were seen as separate to the contract between Minerals and Superior, this dispute certainly arises out of or relates to "the relationship between the parties." Indeed, courts have generally

13

found arbitrable disputes about an agreement settling, or purporting to settle, an alleged breach of an underlying contract containing a broad arbitration provision. *See, e.g., Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 854 (N.D. Ill. 2007) ("Under a plain reading, the broadly worded arbitration clause contained in the Administration Agreement encompasses the parties' dispute over the validity of the settlement agreement, which is "related to" the parties' performance of the Administration Agreement and the payment of funds allegedly owed to Defendant thereunder. Nothing in the clause indicates that the parties intended to exclude disputes arising over settlement of an alleged breach of the Administration Agreement. Parties to a broadly worded arbitration clause who fail to exclude a particular type of dispute are assumed to have intended to include such disputes within the ambit of their agreement."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lebovitz*, No. Civ.A. 03-2468, 2004 WL 2282957, at *3 (D. Kan. May 12, 2004) ("[A]s the release is an alleged contract entered into subsequent to the signing of the Standard Option Agreement, resolution of the validity and enforceability of the release falls squarely within the scope of the parties' arbitration agreement."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Poore*, No. Civ. A. 03-0228, 2003 WL 21294995, at *4 (E.D. Pa. Feb. 20, 2003) ("The Settlement Agreement was intended to resolve a dispute arising out of the termination of Defendant's employment. The dispute over the validity of the Settlement Agreement is based on an alleged continuation of the conduct which gave rise to the initial dispute. We are satisfied that the disputes between these parties arise out of Defendant's employment or the termination thereof and are therefore arbitrable."); *Prime Vision*

14

*Health, Inc v. Indiana Eye Clinic, P.C.*, No. IP00-0096-C-B/S, 2000 WL 977397, at *4 (S.D. Ind. 2000) ("Since the dispute over the Settlement Agreement arose out of an alleged breach of the ASA, and the Settlement Agreement was crafted to directly relate to the ASA, we find, as a matter of law, that this dispute had its origin in the ASA and a claimed breach thereof, and is, therefore, well within the scope of the ASA's arbitration clause.").

Minerals counters with a Wisconsin Court of Appeals case, *Kimberly Area School District v. Zdanovec*, 222 Wis. 2d 27, 586 N.W.2d 41 (Ct. App. 1998).  In *Kimberly*, the defendant teacher Zdanovec moved to compel arbitration of the school district's action for declaratory judgment enforcing her resignation.  The court of appeals found that the trial court had the authority to determine arbitrability and that the case was not arbitrable.  The present case is distinguishable in at least two material respects.  First, as to the question of arbitrability, the court found that the grievance process in the collective bargaining agreement only covered "discharges and nonrenewals," and therefore did not cover the teacher's resignation.  *Id.* at 42, 586 N.W.2d at 48.  Here, the broad arbitration provision in Minerals' contract with Superior would appear to cover the settlement dispute at issue here.  Second, unlike in *Zdanovec*, the settlement agreement at issue here was reached and recorded during an arbitration proceeding to resolve a dispute over the underlying contract between the parties.

At the hearing on the TRO, Minerals argued that it will be irreparably harmed if the Arbitration Panel decided its fraudulent inducement claims, relying on a dated New York state case, which supports the exact opposite of Minerals' position.  In *Weinrott v.*

15

*Carp* (In re *Weinrott*), 298 N.E.2d 42 (N.Y. 1983), the Court of Appeals of New York

held that, consistent with the policy adopted by federal courts, a fraud in the inducement

claim was arbitrable so long as the fraud claim concerned the entire contract rather than

a claim that the alleged fraud goes to the arbitration provision itself.  "As a general rule,

however, under a broad arbitration provision the claim of fraud in the inducement should

be determined by arbitrators."  *Id.* at 856 (overruling *Matter of Wrap-Vertiser Corp. v.

Plotnick* (In re *Wrap-Vertiser*), 143 N.E.2d 366 (N.Y. 1957)).

In *Weinrott*, the court declined to compel arbitration because the fraudulent

inducement claim had worked its way through the court system by that point and,

therefore, there was "no need to give appellants another bite of any apple that has

already been chewed to the core."  *Id.*  at 857.  The *Weinrott* court actually criticized the

very approach proposed by Minerals:

> The case at bar demonstrates the problem inherent in
> allowing parties to claim that fraud in the inducement, even
> under a broad arbitration clause, should be an issue triable by
> the courts. As often happens in this type of case, appellants
> moved to stay the arbitration on the ground that there was
> fraud in the inducement of the contract. Although appellants'
> contention was 'not supported by the record and is refuted by
> documentary evidence', the arbitration continued to be
> stayed while that preliminary issue laboriously worked its way
> through the New York court system. Finally, after the issue
> fell exhausted at the Court of Appeals, the arbitration
> hearings commenced.

*Id.* at 856 (internal citation omitted).

So, too, here, the law permits an arbitration panel to decide fraudulent

inducement claims where the claim at issue involves the entire agreement, rather than the

arbitration provision in the agreement itself.  In *Matthews v. Rollins Hudig Hall Co.*, 72

F.3d 50 (7th Cir. 1995), the parties entered into a written employment contract, which contained an arbitration provision:  "Any controversy or claim relating to a breach of this Agreement shall be determined and settled by arbitration . . . ."  *Id.* at 52.  Matthews filed a complaint against the defendant, which included a fraudulent inducement claim. *Id.*  The court determined that the fraudulent inducement claim was subject to arbitration because the "allegations demonstrate that his fraudulent inducement claim is 'related to a breach of th[e] Agreement' because it directly relates to whether Matthews breached the Agreement by failing to produce new business, or whether Rollins Hall breached the Agreement by terminating Matthews without cause."  *Id.* at 54.  Minerals' argument that the Arbitration Panel lacks authority to decide its fraudulent inducement claims is without merit.

Minerals also argues that the arbitration provision in the contract terminated at the time the contract was terminated.  Similar to its argument on a fraudulent inducement claim, this argument has no basis in the law.  Minerals relies on a dated new York Court of Appeals case, *In re Kramer & Uchitelle, Inc.*, 43 N.E.2d 493 (N.Y. 1942), but the holding in that case -- that the arbitration clause in a nullified contract is no longer valid -- does not reflect the current state of the law on this matter.  As the Supreme Court explained in *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 255 (1977), "the failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship."

17

In *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993), the Seventh Circuit extended the holding in *Nolde* to tort claims, like the ones alleged here, even though the parties' agreement had expired by its terms. "If the parties had wished to limit the duty to arbitrate to the term of the Agreement itself they could have said so explicitly.  Instead, they use language that evinces an intent to commit to arbitration any dispute connected with the contract irrespective of when it occurs."  *Id*.  This would appear particularly even more appropriate here given that the arbitration provision at issue is not limited to disputes arising out of or relating to the contract, but extends further to disputes arising out of or relating to the "relationship between the parties."

Accordingly, the court holds that the arbitration provision in the contract between Minerals and Superior controls the parties' dispute over the validity of their settlement agreement and Minerals' underlying fraud claim.

### III.    Motions for Leave to Amend and to Dismiss Insight Equity Defendants

The Insight Equity defendants move to dismiss Minerals' claims pursuant to Federal Rule of Civil Procedure 41, arguing that the settlement agreement entered on the record in the arbitration proceeding and attached to Minerals' motion for leave to file a second amended complaint constitutes a "stipulation of dismissal."[8]  *See Role v. Eureka*

---

[8] Also pending before the court is the Insight Equity defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  (Dkt. #37.)  The court need not reach the merits of this motion given its decision to dismiss Minerals' claims against these defendants pursuant to Fed. R. Civ. P. 41.

*Lodge No. 434, I.A. of M & A.W. AFL-CIO*, 402 F.3d 314, 318 (2d Cir. 2005) (holding that "a voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed, as contemplated by Fed. R. Civ. P. 41(a)").  Minerals does not take issue with the Insight Equity defendants' argument that Rule 41 would apply where a stipulation is entered on the record, even though the parties fail to enter into a signed stipulation.

Instead, Minerals contends that (1) Superior and the named defendants in the 2010 action committed fraud in securing settlement and (2) Minerals "could not further perform pursuant to the Settlement Agreement without ratifying Insight Equity's fraud and having a claim of waiver as to its rights to proceed against Insight Equity for its fraudulent acts."  (Pl.'s Opp'n Mot. to Dismiss (dkt. #90) 4.)[9]  As the court has already determined, however, the question of whether the settlement agreement is valid and enforceable was properly decided by the arbitration panel, including a rejection of Minerals' claims of fraud.  While Minerals challenging the arbitration panel's decision, and so the arbitration panel's rejecting of Minerals' fraud claim may not be final if timely pursued and overturned in state courts, the court sees no reason to hold open Minerals' claims against the Insight Equity defendants in the unlikely event that a state court vacates the arbitration award.  *See, e.g.*, *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988) ("The corollary to this federal bias in favor of

---

[9]  In its proposed second amended complaint, Minerals seeks to assert these fraud claims against the Insight Equity defendants and add Superior as a defendant, but allowing leave to amend would undermine both the express provisions of the Settlement Agreement and its intent.

arbitration is that 'judicial review of an arbitration award is extremely limited.'") (quoting *E.I. DuPont de Nemours v. Grasselli Emps. Indep. Ass'n*, 790 F.2d 611, 614 (7th Cir. 1986)). Rather, Minerals may seek reinstatement of this suit and reconsideration of its motion to amend if it is successful in convincing a state court to vacate the arbitration award.[10]

## IV.    Hunton & Williams' Motion to Dismiss

All that remains to these two lawsuits is Hunton & Williams' motion to dismiss Minerals' claims in the 2010 action for (1) tortious interference with a contract, (2) aiding and abetting the commission of a tort, (3) civil conspiracy, and (4) breach of a protective order.  As noted above, the settlement agreement did not require Minerals to dismiss claims against H&W and, therefore, the arbitration panel's proceedings and decisions do not control Minerals' claims against H&W.

H&W contends instead that its motions to dismiss should be granted because: (1) it is immune from liability as Superior's attorney acting within the scope of its attorney-client relationship absent malice, fraud, or other unlawful acts; (2) the documents referenced in Minerals' complaint do not support a claim for tortious interference; (3) a party cannot be liable for aiding and abetting a breach of contract; (4) an attorney cannot conspire with its principal; and (5) Minerals has waived any breach of protective order claim by already disclosing the contents of Minerals and Superior's contract and, even if it had not, the proper forum for enforcing the protective order is arbitration.

---

[10] Even then, an unsettled question is whether Superior was a compulsory defendant to the 2010 action in light of the overlapping interests and impact of an adverse ruling, which would defeat this court's jurisdiction.

## 1. Immunity

Under Wisconsin law, an attorney is not generally liable to a third party for an act committed "within the scope of an attorney-client agency relationship" absent certain exceptions. *See, e.g.*, *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 321-22, 401 N.W.2d 816, 823 (1987). This "immunity" does not apply when an attorney "acts in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled." *Tensfeldt v. Haberman*, 2009 WI 77, ¶ 63, 319 Wis. 2d 329, 768 N.W.2d 641 (quoting *Strid v. Converse*, 111 Wis. 2d 418, 429-30, 331 N.W.2d 350, 456 (1983)). The Wisconsin Supreme Court has described this as an exception for fraud. *See Goerke v. Vojvodich*, 67 Wis. 2d 102, 107-08, 226 N.W.2d 211, 215 (1975) (finding immunity where plaintiff failed to allege that attorney committed fraud because complaint did not allege that the attorney withheld certain information "for the purpose of misleading or misinforming the other party"). Courts grant attorney immunity out of recognition that imposing liability on an attorney acting within the scope of a client relationship would unduly strain an attorney's undivided duty to his or her client. *See Auric v. Cont'l Cas. Co.*, 111 Wis. 2d 507, 513, 331 N.W.2d 325, 328 (1983) ("Where courts have shied away from allowing the imposition of liability, concern has been expressed that such liability may conflict with the duty an attorney owes to his client."). In a commercial setting, there would seem no greater strain on an attorney's loyalty to his or her client than the potential (indeed likely) exposure to suit by a client's direct competitor.

21

The complaint alleges H&W advised counsel for Wildcat that it must terminate the supply contract with Minerals before Wildcat could negotiate a similar contract with Superior.  (Am. Compl. (dkt. #26) ¶¶ 13, 15, 16.)  In doing so, Minerals alleges that H&W (1) tortiously interfered with Minerals' contract with Wildcat, (2) "assisted and aided Superior in their scheme to terminate Wildcat's relationship with Minerals," and (3) "engaged in an unlawful conspiracy to cut Minerals out of the supply chain."  (*Id.* at ¶¶ 23, 33, 41.)  Also material to this motion, Minerals alleges that H&W acted "as attorneys for Superior," "as counsel for Superior," "with authority from Superior," and for "the benefit of their firm and their client, Superior."  (*Id.* at ¶¶ 17, 21.)  Central to Minerals' claim, the complaint alleges that H&W's "demand that Wildcat must terminate its contract with [Minerals] . . . was done with authority from Superior."  (Am. Compl. (dkt. #26) ¶ 21.)

Taken as a whole, these allegations foreclose any finding that H&W was acting outside of the scope of its "attorney-client agency" with Superior in dealing with Wildcat. The only issue is whether Minerals' allegations fall within the exception to the immunity provision; namely, whether Minerals alleges that H&W acted fraudulently or "act[ed] in a malicious, fraudulent or tortious manner which frustrates the administration of justice or to obtain something for the client to which the client is not justly entitled."  *Strid*, 111 Wis. 2d at 429-30.

Minerals' allegations do not support such a finding for at least two reasons.  First, the emails referenced in Minerals' complaint and provided by H&W as part of its motion to dismiss undermine Minerals' allegation that H&W "demanded" that Wildcat

22

terminate its contract with Minerals.[11]  In the emails, H&W simply states that Superior cannot negotiate with Minerals absent "written assurance that Wildcat's existing contracts create no such restriction."  (Br. in Support of Mot. to Dismiss, Ex. E (10-cv-488 dkt. #42-4).)  Perhaps Minerals is reading between the lines to infer that H&W "demanded" or at least induced Wildcat to terminate its contract with Minerals, but the communications relied on by Minerals in its complaint contain no express demand that Wildcat terminate its contract with Minerals.

On the contrary, a fair reading of the emails underlying Minerals' complaint is that H&W was simply seeking assurances for its client that Wildcat was free of any existing contractual restrictions before allowing any bargaining.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").  Rather than tortuously interfering, this conduct appears reasonably intended to protect Superior from allegations of engaging in that very tort.

Second, Minerals' allegations against H&W do not begin to rise to the level of fraud or misconduct other courts have found sufficient to fall within the fraud exception to attorney-client immunity.  For example, the Wisconsin Supreme Court held in

---

[11] These emails are properly considered by the court on a motion to dismiss.  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)  ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").  Minerals refers to these communications in its amended complaint and the content of the communications is central to its claims against H&W.

*Tensfeldt v. Haberman* that an attorney-defendant was not entitled to qualified immunity because he "drafted documents that obtained for [his client] something he was not legally entitled to -- an estate plan that violated a court judgment requiring [the client] to leave two-thirds of his net estate to his children outright." 2009 WI 77 at ¶ 64. As alleged, the attorney in *Tensfeldt* acted in a way that "frustrate[d] the administration of justice" and attempted to "obtain something for the client to which the client is not justly entitled," both in direct violation of a court order. Even more to the point for purposes of Minerals' claims against H&W, the *Tensfeldt* Court explicitly distinguished the allegations at issue from cases cited by the defendant-attorney in support of his argument for qualified immunity, because those cases "involve the client's breach of a contract or fiduciary duty." 2009 WI 77 at ¶ 65 & n.26 (listing several cases where courts found attorney's immune from liability for aiding and abetting or inducing breach of contract claims).

In *Auric v. Continental Casualty Co.*, the Supreme Court similarly allowed a beneficiary of a will to maintain an action against the attorney who negligently drafted it, even though the beneficiary was not in privity with that attorney. 111 Wis. 2d 507, 514, 331 N.W.2d 325, 329 (1983). The Court reasoned that the right to "make a will and to have it carried out according to the testator's intentions" as provided by the Wisconsin Constitution supports the imposition of liability in this specific, limited context. *Id.* at 513-14, 331 N.W.2d at 329.

Finally, in a case relied on by Minerals in opposing the motion, the plaintiff alleged gross misconduct against an attorney, including that the attorney "exceeded the

24

bounds of his professional obligation to Sharp and the Scarberrys and became an active participant in . . . fraudulent activities, acting in bad faith out of self-interest and/or malice toward Lane." *Lane v. Sharp Packaging, Inc.*, 248 Wis. 2d 380, 390, 635 N.W.2d 896, 901 (Ct. App. 2001).

By contrast, Minerals alleges that H&W aided its client in securing a contract with Wildcat.  H&W did not act outside of the scope of its client relationship with Superior, disobey a court order, or commit fraud against Minerals in the course of its dealings with Wildcat.  On the contrary, as alleged and reflected in referenced documents, H&W appears to have represented its clients interests without crossing any ethical or moral line.  Therefore, H&W is entitled to immunity and the court will dismiss Minerals' claims against H&W arising out of its alleged involvement in Wildcat's decision to end its relationship with Minerals.[12]

---

[12] In holding that H&W is entitled to immunity, the court need not reach the question of Superior's potential liability, including any liability possible for actions of its authorized agent H&W.  Similarly, the court need not respond to the other arguments posited by H&W with respect to Minerals' claims, other than to note that -- as H&W argues and Minerals fails to respond -- a simple breach of contract allegation cannot support an aiding and abetting claim as a matter of law.  A civil action for aiding and abetting under Wisconsin law requires "conduct that as a matter of objective fact aids another in the commission of an unlawful act[.]"  *Tensfeldt*, 2009 WI 77 at ¶ 26 n.12.  An unlawful act, here, does not encompass a breach of contract.  *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 413 (7th Cir. 2000) (noting that the Restatement (2d) of Torts § 876 provides a cause of action for aiding and abetting another's tortious acts, but a breach of contract is not a tortious act, and therefore aiding and abetting a breach of contract is not a recognized cause of action under Illinois law).

### 2.    Breach of Protective Order

Finally, Minerals alleges that H&W breached a protective order entered into in the arbitration proceeding by disclosing and referring to certain terms of the contract in its pleadings.  (Am. Compl. (dkt. #26) ¶ 56.)  Immunity does not apply to this claim since the alleged disclosure occurred within the confines of H&W defending itself against Minerals' claims, and therefore outside of the scope of any attorney-client relationship. Minerals' claim, however, fails for other reasons.  Accordingly, the court will also dismiss Minerals' claim for breach of protective order.

As an initial matter, Minerals has failed to point to, and this court cannot find, any cases where a dispute about a discovery order formed the basis of a separate claim. (*See also* H&W's Opening Br. (dkt. #42) 21 (citing cases in which courts have "rejected the tactic of attempting to turn a violation of a discovery order into a tort").)  If the protective order had been issued in this court (and there is one in place now), a motion for sanctions would be the appropriate recourse, not the filing of a separate cause of action.  This is particularly true in light of the fact that H&W was not a party to the arbitration proceeding, and bound only to the extent contemplated by the arbitration panel.[13]

Even if a separate cause of action, this court would still abstain from enforcing the terms of a protective order entered in another forum.  The cases cited by Minerals in support of its argument that this court should enforce the terms of the protective order

---

[13]  To the extent that sanctioning H&W were found to fall outside the power of the arbitration panel, it could still punish Superior for acts of its agent or report the firm to the Officer of Lawyer Regulation.

are not on point; neither involves the enforcement of a protective order entered in an arbitration proceeding by a federal court.  In *Yasada Fire & Marine Ins. Co. of Europe, Ltd. v. Continental Casualty Co.*, 37 F.3d 345 (7th Cir. 1994), the Seventh Circuit considered whether an interim order was an "award" within the meaning of 9 U.S.C. § 10, and therefore subject to federal court review.  In *Griffith v. University Hospital, LLC*, 249 F.3d 658 (7th Cir. 2001), the Seventh Circuit affirmed the district court's denial of a motion to intervene to secure discovery obtained during an arbitration based on the settlement agreement's confidentiality provision and a protective order entered into in the district court.[14]

## ORDER

IT IS ORDERED that:

In No. 10-cv-488-wmc,

1) defendants Insight Equity, LLC and Insight Equity LP's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2) (dkt. #37) are DENIED AS MOOT.  The Insight Equity defendants may refile its motion to dismiss if plaintiff Minerals Development & Supply Company, Inc. is successful in its efforts to vacate the arbitration award;

---

[14] Although not a basis for the court's decision, H&W also argues that Minerals waived any claim, or any claim to damages as least, by disclosing terms of the contracts in its original complaint, which unlike the amended complaint was not filed under seal.  While it is true that Minerals included details about Minerals' contracts with Superior and Wildcat, including seemingly sensitive information about purchase prices, Minerals did not disclose the contracts in their entirety.  While other information in the contracts not disclosed by Minerals in its original complaint might form the basis of Minerals' claim for breach of protective order, this is not the appropriate forum to pursue relief for the reasons already stated.

2) defendants Insight Equity, LLC and Insight Equity LP's motions for leave to file matters outside of pleadings (dkt. ##38, 41) is GRANTED;

3) defendant Hunton & Williams LLP's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (dkt. #40) is GRANTED;

4) plaintiff Minerals Development & Supply Company, Inc.'s motion to file second amended complaint (dkt. #55) is DENIED subject to Minerals seeking leave to refile if it is successful in efforts to vacate the arbitration award;

5) defendants Insight Equity, LLC and Insight Equity LP's motion to dismiss pursuant to Fed. R. Civ. P. 41 (dkt. #60) is GRANTED and the claims against these defendants are dismissed without prejudice, pending possible reopening if Minerals should succeed in its efforts to vacate the arbitration award;

6) defendants' motion to supplement its opposition to plaintiff's motion for leave to file a second amended complaint (dkt. #76) is GRANTED;

7) plaintiff's motion to supplement its motion for temporary restraining order (dkt. #83) is GRANTED;

8) defendants' motion to take judicial notice (dkt. #94) is GRANTED;

9) plaintiff's motion for summary judgment (dkt. #106) is DENIED AS MOOT;

10) Superior Silica LLC's motion to intervene (dkt. #125) is DENIED; and

11) Superior's motion to file a reply brief (dkt. #133) is GRANTED; and

12) the clerk of the court is directed to enter judgment in favor of defendants and close Case No. 10-cv-488-wmc.

The court DISMISSES Case No. 11-cv-17-wmc for lack of subject matter jurisdiction and orders the clerk of the court to close the case.

Entered this 30th day of September, 2011.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

28